J-A22043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CANDELARIO SANCHEZ | |
| Appellant | No. 2028 MDA 2015 |

Appeal from the PCRA Order April 24, 2014
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001621-2006

BEFORE: GANTMAN, P.J., PANELLA, J., and JENKINS, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED OCTOBER 06, 2016**

Appellant, Candelario Sanchez, appeals from the order entered in the York County Court of Common Pleas, which denied his serial petition filed under the Post Conviction Relief Act ("PCRA") at 42 Pa.C.S.A. §§ 9541-9546. We affirm.

The relevant facts and procedural history of this appeal are as follows.

> On December 14, 2005, officers were conducting a controlled buy in which the target was Santos Ramos-Rodriguez, [Appellant's] co-defendant. When Ramos-Rodriguez arrived at the buy location, Appellant was seated in the passenger seat of the vehicle. However, at this time officers did not even know the name of the individual sitting in the passenger seat. After the buy, both Ramos-Rodriguez and Appellant were arrested and searched.
>
> The search of the vehicle and Ramos-Rodriguez yielded the following: a black baggie; one baggie of cocaine; a black wallet; a Timex Expedition watch; black gloves; a cell

phone; and $477 in cash. Appellant was found with a black wallet, keys with a container containing two blue pills, two orange pills, and one white pill, and two sets of keys. Although Trooper Keppel initially testified that all of the key rings were in Appellant's possession, he clarified that one set of keys was found on Appellant, and the other two sets were found in the vehicle. Nevertheless, he then testified that the keys were found next to Appellant in the vehicle. However, this is not consistent with the evidence log which says [the] keys and attached container came from Appellant, but does not indicate who had the other two sets of keys. Furthermore, when Corporal Fenstermacher was called by the defense to testify, he stated that only one set of keys was recovered from Appellant, and the other two sets were found in the vehicle. Corporal Fenstermacher opined that these sets of keys belonged to Ramos-Rodriguez since he owned the vehicle.

Using all three keys, officers were able to open three residences: one at 32 North Queen Street, one [at] 314 Reinecke Place, and one at 626 Chestnut Street. However, Corporal Fenstermacher could not recall which keys opened which apartments; all he could say was that a combination of the keys opened all three.

Officers determined that Ramos-Rodriguez lived at 32 N. Queen Street based on prior surveillance and items found inside the apartment. After executing the search warrant, officers found the following items: one baggie of cocaine; mail [addressed] to Ramos-Rodriguez; a strainer with residue; a roll of tinfoil; two packets of rolling paper; one plastic baggie; two plastic bags of heroin; a marijuana cigarette; a driver's license belonging to Ramos-Rodriguez; two cell phones; assorted mail; $1,250 in cash; a napkin with the address 802 Maryland Avenue written on it; a bank deposit slip; a check; a social security card with Ramos-Rodriguez's name on it; $21,554 in cash in the bathroom closet; Viagra pills; and a brown paper bag.

During their investigation, officers determined that the residence at 314 Reinecke Place was being rented out by Appellant. The following items were found: latex gloves; a box of face masks; a box of sandwich bags; a roll of duct

tape; a brown paper bag containing a baggie with a ripped corner; a pair of scissors; a newspaper with handwritten numbers; a Columbia Gas bill in the name of Ramos-Rodriguez dated November 30, 2005; mail addressed to Appellant at 324 Harding Court; a bag of white powder; a Black & Decker coffee grinder; and assorted mail addressed to various individuals. Corporal Fenstermacher testified that, in his opinion, these items coupled with the drugs and money found at the other two locations was indicative of a large scale drug operation.

The white powder that was found at 314 Reinecke Place was not a controlled substance; although, Corporal Fenstermacher speculated that the powder could have been used to dilute cocaine for packaging purposes. However, there was no testimony as to what the white powder actually was.

Finally, the following items were found at 626 Chestnut Street: a cell phone; four plastic bags containing heroin; three bricks of cocaine; another bag containing smaller bags of cocaine and heroin; a bag of packaging materials; sifters and spoons; a digital scale; sandwich bags; a coffee grinder; 150 orange pills; a box of ammunition; a delivery notice addressed to Ramos-Rodriguez; photographs; mail addressed to Appellant; paper towels; boxes of plastic bags; paperwork; another cell phone; a brown safe; two backpacks; and a firearm. Police found medical paperwork for Appellant in a dresser drawer, and also a bunch of pictures of Appellant and Ramos-Rodriguez.

Corporal Fenstermacher testified that in total 3,686 grams of cocaine [were] found, which equates to about $368,000.00. A total of 1,583 grams of heroin [were] found, which equates to just a little over $1,000,000.00. Finally, the pills that were found were tested and determined to be morphine.

Milgras Guilb, office manager of Quality Management Incorporated, testified that Ramos-Rodriguez rented two properties from her—314 Reinecke Place and 626 Chestnut Street. After Ramos-Rodriguez's lease was up, Appellant began renting the apartment at 314 Reinecke Place on September 1, 2005.

Appellant was arrested on December 14, 2005, and charged with two counts of possession with intent to deliver; two counts of criminal conspiracy; one count of persons not to possess firearms; and one count of receiving stolen property. Following his arrest, a preliminary hearing was held on March 1, 2006, and he was arraigned on April 7, 2006. One count of criminal conspiracy was withdrawn along with the charge of receiving stolen property.

On May 8, 2006, Appellant, through counsel, filed an omnibus pretrial motion seeking severance of Appellant's case from Ramos-Rodriguez's case. A hearing was held on May 30, 2006, and the severance was denied. … Testimony was heard on July 3 [and] July 5-6, and the jury returned a guilty verdict on July 7, 2006.

On August 21, 2006, Appellant was sentenced to 25 years to 50 years' imprisonment in a state correctional institution. On September 20, 2006, Appellant [timely filed a] notice of appeal to the Superior Court. [The trial court] directed him to file his [Pa.R.A.P.] 1925(b) statement, which he did on October 31, 2006. Appellate counsel failed to file a brief with the Superior Court, and the appeal was dismissed on May 17, 2007.

Appellant filed his first *pro se* PCRA petition on July 9, 2007. Lori A. Yost, Esquire was appointed to represent Appellant. On October 30, 2007, Appellant's appeal rights were reinstated. On November 8, 2007, Appellant, through counsel, filed a motion to modify sentence. That motion was denied on December 3, 2007.

On December 27, 2007, Attorney Yost filed a notice of appeal to the Superior Court on Appellant's behalf. The Superior Court affirmed Appellant's judgment of [sentence] in a non-precedential opinion filed on March 24, 2009, and docketed to 2194 MDA 2007. The issues raised on direct appeal were: 1) the denial of the motion to sever the trials; 2) a comment made by the district attorney about Appellant not testifying; 3) sufficiency of the evidence; 4) jury instructions; and 5) sentencing. The Pennsylvania Supreme Court denied Appellant's petition for allowance of

appeal on October 28, 2009. The U.S. Supreme Court also denied a writ of *certiorari* [on March 22, 2010].

Appellant timely filed his second[1] PCRA petition on March 18, 2011, and [the PCRA court] reappointed Attorney Yost to represent him on this petition. [The court] scheduled a hearing for July 26, 2011. On June 9, 2011, Appellant, through counsel, filed an amended PCRA petition.

The amended PCRA petition raised the following issues: 1) Was trial counsel ineffective for failing to employ an expert in drug packaging and processing and/or ineffective in his cross-examination of the Commonwealth's expert? 2) Was trial counsel ineffective for failing to file a pretrial motion seeking suppression of the evidence found at 314 Reinecke Place? 3) Was trial counsel ineffective in his cross examination of [Appellant's] co-defendant Santos Ramos-Rodriguez? 4) Was trial counsel ineffective for failing to object to the testimony of the Pennsylvania State Police Crime Lab Supervisor where the analyses in this case were completed by another lab technician who did not testify?

At the July 26th hearing [the PCRA court] reserved decision, but ultimately denied Appellant's petition by order and opinion filed on January 17, 2012. Based on what was presented at the hearing, [the PCRA court] could not find that trial counsel was ineffective. More specifically, [the PCRA court] found that trial counsel's actions were reasonably based on the evidence that the Commonwealth had presented implicating Appellant. Unfortunately, the jury believed the Commonwealth presented evidence which proved each element of the offenses beyond a reasonable doubt. The Superior Court reviewed the record, and affirmed the [order denying PCRA

---

[1] The court refers to the March 18, 2011 petition as Appellant's "second" petition, although it is considered his first petition for purposes of the statutory timeliness requirements. *See Commonwealth v. Turner*, 73 A.3d 1283, 1286 (Pa.Super. 2013), appeal denied, 625 Pa. 649, 91 A.3d 162 (2014) (reiterating: "When a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* in his first PCRA petition, a subsequent PCRA petition will be considered a first PCRA petition for timeliness purposes").

relief]. Reviewing the record as [the PCRA court has] done, several years past the time of the trial, [the PCRA court sees] several problems with the sufficiency of the evidence in this case; however, the jury as the trier of fact had the opportunity to view the evidence and listen to the testimony of witnesses to make determinations of credibility.

On February 10, 2012, Appellant [timely filed a] notice of appeal to the Superior Court. On March 14, 2013, the Superior Court affirmed [the] denial of Appellant's petition. However, before the Superior Court had ruled, Appellant filed a *pro se* PCRA petition on February 1, 2013. In this petition, Appellant alleged that his appellate counsel, Attorney Yost, was ineffective. Due to the fact that [the PCRA court] had appointed Attorney Yost, who had represented Appellant on appeal, to represent him on his PCRA, [the court] did not deny Appellant's petition. Instead, on March 26, 2013, the court appointed Seamus D. Dubbs, Esquire, to represent Appellant on his [February 1, 2013] petition.

[The PCRA court] scheduled a hearing on the matter for May 29, 2013. However, before a hearing could be held, Attorney Yost filed a petition for allowance of appeal to the Pennsylvania Supreme Court. Once the Supreme Court denied Appellant's request to review the case, [the PCRA court] reappointed Attorney Dubbs, and scheduled a hearing for February 27, 2014.

[The only issue raised at the February 27th hearing] was whether Attorney Yost was ineffective for failing to ask the Superior Court for reconsideration following its affirmance of Appellant's judgment of sentence. On April 24, [2014], the PCRA court issued an order and opinion denying Appellant's PCRA petition.

On May 30, 2014, Appellant filed a *pro se* notice of appeal to the Superior Court. On June 2, 2014, Attorney Dubbs filed a notice of appeal to the Superior Court. The same day, [the PCRA court] directed Appellant to file his [Rule] 1925(b) statement. … On [June] 15, 2014, Appellant filed his [Rule] 1925(b) statement.

On July 18, 2014, the Superior Court directed Appellant to show cause as to why his appeal should not be dismissed because the PCRA court did not grant Appellant leave to appeal *nunc pro tunc*. Having received no response from Appellant, the Superior Court quashed the appeal on August 11, 2014.

On July 13, 2015, Appellant filed another *pro se* PCRA petition. … On October 29, 2015, [at a PCRA hearing, the court] reinstated Appellant's appeal rights with respect to the April 24, 2014, denial of his PCRA petition. … Appellant timely filed a notice of appeal…on November 20, 2015. [The PCRA court] directed him to file [a Rule] 1925(b) statement, which he did on December 14, 2015.

(PCRA Court Opinion, filed December 30, 2015, at 2-8).

Appellant raises the following issue for our review:

WHETHER SUFFICIENT EVIDENCE WAS PRESENTED TO SUSTAIN A VERDICT OF GUILTY[?]

(Appellant's Brief at 7).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). The PCRA court findings will not be disturbed unless the certified record provides no support for the findings. **Commonwealth v. Taylor**, 933 A.2d 1035, 1040 (Pa.Super. 2007), *appeal*

*denied*, 597 Pa. 715, 951 A.2d 1163 (2008).

Appellant argues the Superior Court misstated key facts on direct appeal. Appellant contends police did not find any drugs at Appellant's residence, 314 Reinecke Place, as stated in this Court's March 24, 2009, disposition. Appellant asserts the police searching Appellant's residence found only ordinary household items: a box of latex gloves, a box of face masks, a box of sandwich bags, a roll of duct tape, a plastic bag with a ripped corner, a pair of scissors, a newspaper with numbers written on it, mail, a bag of unknown white powder, a coffee grinder, and a small plastic baggie with the number "8" written on it. Appellant maintains the prosecution was unable to prove he had control over the apartment at 626 Chestnut Street, where drugs were found, or to demonstrate Appellant's awareness of any drug activity occurring there. Appellant insists his presence in his co-defendant's car on the date of his arrest was just because he needed a ride to another location. Appellant indicates his co-defendant's testimony established Appellant was not involved in drug production or sales. Appellant concludes the evidence presented was insufficient to sustain his convictions. We cannot agree.

The timeliness of a PCRA petition is a jurisdictional requisite. **Commonwealth v. Robinson**, 12 A.3d 477 (Pa.Super. 2011). A court may not examine the merits of a petition for post-conviction relief that is untimely. **Commonwealth v. Abu-Jamal**, 574 Pa. 724, 735, 833 A.2d

719, 726 (2003), *cert. denied*, 541 U.S. 1048, 124 S.Ct. 2173, 158 L.Ed.2d 742 (2004). To be eligible for relief under the PCRA, a petitioner must plead and prove, *inter alia*, his allegations of error were not previously litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). A PCRA petition must be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. To invoke an exception, a petition must allege and the petitioner must prove:

> (i) the failure to raise a claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). A petitioner asserting a timeliness

exception must file a petition within sixty days of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

Instantly, Appellant's judgment of sentence became final on March 22, 2010, when the United States Supreme Court denied his petition for writ of *certiorari*. *See* U.S.Sup.Ct.R. 13. Appellant filed his most recent PCRA petition (3rd) on July 13, 2015. Appellant's third petition made no attempt to plead and prove any exception to the PCRA's time restrictions, pursuant to Section 9545(b)(1). Instead, Appellant alleged that, on May 8, 2015, he discovered this Court had quashed his appeal from the denial of his second PCRA petition on August 11, 2014. Appellant filed his third PCRA petition 66 days later. Thus, Appellant's third petition was patently untimely. *See* 42 Pa.C.S.A. § 9545(b)(1). Appellant's third petition sought to reinstate his appeal rights from the order denying his second PCRA petition that he filed on February 1, 2013, while the appeal from his first PCRA petition was still pending. The PCRA court should have dismissed Appellant's February 1, 2013 PCRA petition, for lack of jurisdiction. *See Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585 (2000) (holding court has no jurisdiction to review subsequent PCRA petition that is filed while appeal from previous PCRA petition is still pending). *See also Commonwealth v. Davis*, 816 A.2d 1129, 1134 (Pa.Super. 2003), *appeal denied*, 576 Pa. 710, 839 A.2d 351 (2003) (stating appellant is precluded from filing additional PCRA petition while prior PCRA petition is pending on appeal; if untimely,

subsequent petition must plead and prove exception to one-year jurisdictional time bar). Likewise, Appellant's February 1, 2013 petition (second) was facially untimely, as it was filed almost three years after his judgment of sentence became final. Yet, the court allowed this second PCRA petition to linger until after the pending appeal concerning the denial of Appellant's previous petition was resolved; then the court granted a hearing on the second petition. Ultimately, the court properly dismissed the second petition in its April 24, 2014 order. Although the PCRA court offered a different rationale for its denial of relief, this Court may affirm on any basis. *See Commonwealth v. Reese*, 31 A.3d 708, 727 (Pa.Super. 2011) (*en banc*) (stating appellate court may affirm order of trial court on any basis if ultimate decision is correct). Thus, we affirm the April 24, 2014 order presently before us, which denied Appellant's February 1, 2013 petition (second), because the court had no jurisdiction to address it on the merits.[2]

Order affirmed.

_____

[2] Moreover, to the extent Appellant's February 1, 2013 petition was based on PCRA counsel's ineffectiveness, Appellant abandoned that claim in this appeal. Instead, Appellant's brief addressed only the sufficiency of the evidence to support his conviction. We observe that Appellant's sufficiency challenge was previously litigated on direct appeal. *See Commonwealth v. Sanchez*, 972 A.2d 561 (Pa.Super. 2009), *appeal denied*, 603 Pa. 685, 982 A.2d 1228 (2009) (affirming Appellant's conviction based on Appellant's access to large drug stash housed at 626 Chestnut Street). The appellate decision made clear this Court did not rely on the errant fact contained in its summary of facts. Put simply, the PCRA court erred when it addressed the actual merits of Appellant's sufficiency issue.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/6/2016</u>